BOARD OF TRADE OF THE CITY OF NEWARK, PROSECUTOR, v. CITY OF NEWARK, RESPONDENT.

Submitted December 1, 1921—Decided February 21, 1922.

1. Where a statute authorizes a municipality to require a referendum vote on the question whether it shall acquire, within or without the city, a plant for the manufacture of gas, electricity and steam for supplying light, heat and power, or two, or all, and that the city may by resolution require such a referendum according to which the ballots must be prepared, the resolution must definitely state the character of the plant necessary, and clearly indicate the purpose of the referendum, so that a distinct proposition is presented on which the voter may vote yes or no.

2. A resolution which requires a referendum whether the city shall acquire a plant to manufacture gas, electricity or steam, or both, or all, does not set out any distinct proposition to the voter as required by the statute. Whether the plant shall be within or without the city, or whether the lighting shall be by gas or electricity are, under the statute, distinct propositions, when the only answer the voter is allowed to give is by voting yes or no.

On *certiorari.*

Before Justices TRENCHARD, BERGEN and MINTURN.

For the prosecutor, *John R. Hardin.*

For the respondent, *Jerome T. Congleton* and *William J. Kearns.*

The opinion of the court was delivered by

BERGEN, J. This writ of *certiorari* assails the validity of a resolution of the commissioners of the city of Newark requiring the submission to a referendum vote of a question relating to the acquisition or construction by the city of a plant for supplying light, heat and power for public and private use, resting upon the authority of article 33 of the act of 1917, entitled "An act concerning municipalities." *Pamph. L., p.* 319. The first paragraph of the article provides that any municipality may purchase, condemn, take, hold and enjoy, in its name, such real and personal property within or without its corporate limit as may be necessary for the manufacture and distribution of gas, electricity, steam or other products (or all) for supplying light, heat or power, or two, or all, for its own public purposes, or of selling to its inhabitants, or to any other municipality, or both; and to purchase, construct and operate a plant and its appliances such as may be necessary for supplying light, heat or power, provided that the streets of another municipality may not be used without its consent, which, if refused, may be ordered by the Chancellor or Vice Chancellor, whose order concludes the matter. The third paragraph provides that no municipality shall ac-

quire or construct any such plant until approved by a majority of voters who "shall vote so to do." It also makes it the duty of a governing body, upon petition of twenty per cent. of the legal voters, or it may on its own motion pass a resolution "to the effect that a vote is required upon the acquiring or constructing of a light, heat or power plant, as stated in said petition." Thus the act provides for two methods of requiring a referendum, one based on a petition, which must "state for what purpose or purposes any plant or works if acquired or constructed shall be operated, *i. e.,* whether for the purpose of supplying light, heat or power [or any two or all of them]," and the other by resolution of the governing body without petition. In the instant case there was no such petition, but on August 26th, 1920, the city commissioners adopted the following resolution:

"Whereas in the judgment of this board the question whether the city of Newark shall acquire or construct a municipal plant or plants or works, within or without the corporate limits of the city of Newark, for the manufacture, generation, accumulation, storage, transmission and distribution and use of gas, electricity and steam [or two, or all] and for supplying light, heat or power [or two, or all] for its own public purposes and for the purpose of supplying the same to the inhabitants of the city of Newark, or to any other municipality [or both], in accordance with the provisions of article 33 of chapter 152 of the laws of 1917, known as 'An act concerning municipalities,' and the acts amendatory thereof and supplementary thereto, be submitted to the legal voters of the city for adoption or rejection;

"*Resolved,* that a vote is required upon the acquiring or construction of such municipal light, heat and power plant or plants, within or without the corporate limits of the city of Newark at the next general election in said city," which was duly certified to the county clerk and he prepared the ballots which were used at the election, which read as follows: "Shall the city of Newark acquire or construct a plant or works for supplying light, heat and power for the public or private use of this municipality and its inhabitants," which

was voted in the affirmative by a majority of those voting at the election for or against the proposition. This writ was allowed to review the resolution and proceedings thereunder.

The first point argued by the prosecutor is that the resolution is not such as is authorized by the act, because it did not submit any question to which the voter could answer "yes" or "no." We think we must assume, in the absence of any petition, that the recital above quoted is either a part of the resolution or should be considered as a substitute for the petition which must state for what purpose the plant if acquired shall be operated, and that is whether it shall supply light, heat or power or two or all of them. Under this statute the resolution should set out which of the three methods was being submitted, and also whether the plant to be acquired should be within or without the corporate limits of the city. If the resolution had set out that the question submitted was which of three plans should be used—that is, gas, steam or electricity—it might have passed muster, but the question required to be submitted was whether the city should acquire a plant for the manufacture and distribution of either gas, electricity or steam, all three or any two of them, without giving the voter an opportunity to vote on each distinct proposition. The statute requires the petition to state whether the proposed plant if acquired shall be operated for the purpose of supplying light, heat or power, or two or all of them, but that does not justify a governing body in submitting to the voter the question whether two or all shall be the purpose. If a voter should take this ballot prepared according to the resolution, and vote yes, what would he be voting for? It could not be said that he was voting alone for light, or in like manner for heat, and on the question of power would it mean steam or electricity. Surely such a vote could not be counted as a vote in favor of two or all of the purposes or means of power. One might intend voting for a heating plant, another for a lighting plant, and still another for lighting and heating, and another for heating and power, and another for all three. It seems very clear that this resolution did not justify the clerk in formulating the question as

he did, and, therefore, it never was properly submitted to a referendum.

The resolution was defective, and the question submitted by the clerk in preparing the ballot did not follow the resolution even if that was sufficient. Whether the title of the act of 1917 is sufficient to justify legislation relating to the activities of a municipality engaging in a private business is questionable. It is not for the general public necessity but to supply power to a class of manufacturers, and has no relation to the activities of a municipality, but this question it is not necessary to determine.

The resolution and the proceedings following should be set aside, because the questions submitted to the referendum vote were not legally authorized by the resolution, nor the ballot properly prepared. The resolution and the proceedings thereunder will be set aside, with costs.